UNITED STATES FIDELITY & GUARANTY COMPANY *v.* SMITH.

Opinion delivered March 25, 1912.

1.  HOMESTEAD—EXEMPTION—TRUSTEES.—Under art. 9, sec. 3, Const. 1874, exempting the homestead of a resident of the State from the lien of any judgment or decree of any court, and from sale under execution or other

process thereon, except such as may be rendered for the purchase money; * * * or against executors, administrators, guardians, receivers, attorneys for moneys collected by them, *or other trustees of an express trust for moneys due them in their fiduciary capacity.*" a railway station agent who collected money in performance of his duties and failed to account for same is not a trustee of an express trust, even though he gave a bond for the faithful performance of such duties. (Page 149.)

2. SAME—FRAUDULENT CONVEYANCE.—A creditor can not complain of a voluntary conveyance by the debtor of a part of his homestead. (Page 150.)

Appeal from White Circuit Court; *Hance N. Hutton,* Judge; affirmed.

### STATEMENT BY THE COURT.

The Fidelity Company sued appellee for $1,956.83, which it had to pay to the Chicago, Rock Island & Pacific Railway Company, as surety upon the indemnity bond of appellee, who was the station agent of said railroad company at Lonoke, and failed to pay over that amount received by him for said company in the performance of his duty.

Attachments were also issued and levied upon certain of his real estate in White County. Appellee answered, denying the allegations of the complaint, and an amendment to the complaint was filed, in which it was alleged that when it became surety on the bond of appellee to the said railroad company, he was the owner of certain lands in White County, describing them, and had no personal property, exceeding five hundred dollars in value. That on October 4, 1910, the defendant conveyed a portion of said land, a forty-acre tract thereof, to his wife, Mary R. Smith, which conveyance, it was alleged, was voluntary, and made to cheat, hinder and delay plaintiff and other creditors.

It also moved to transfer the cause to equity, and to have Mary R. Smith made a party defendant, and said deed to her cancelled, and the lands sold for the satisfaction of plaintiff's claim.

On July 19 a motion to discharge the attachment was filed. On August 1 appellee answered the amended complaint, admitted the ownership of the lands, as alleged; that he conveyed the forty-acre tract therein mentioned to his wife for the consideration alleged; denied that the same was fraudulent, and alleged that at the time the attachments were levied

upon the land it was the only real estate owned by him, and his homestead, upon which he had resided with his family for years; that the one hundred and twenty acres thereof did not exceed in value the sum of twenty-five hundred dollars, and all constituted his homestead at the time of the conveyance of the portion to his wife; claimed that it was not subject to attachment, and was exempt from seizure under the laws of the State; denied that the conveyance to his wife was fraudulent, and alleged that it was in payment of a just debt; in any event that it was a part of his homestead, with which he had a right to do as he pleased.

The testimony tended to show that appellant became surety on the bond of appellee as station agent for the railroad company, insuring it against loss of money or personal property by him through his personal dishonesty or culpable negligence; that appellee was the station agent of the railroad company at Lonoke, Arkansas, and acted as such until the 28th day of May, 1910, and was short in his accounts with said company for moneys collected and received by him for it, as such agent, in the sum of $1,956.83; that he was checked out by the auditor of the railroad company on said May 28, 1910, and found to be short in that sum in the moneys collected by him as agent, which he failed to pay to the company upon its demand, and was discharged, and that appellant, upon demand of the railroad company, paid the sum of its agent's shortage to the railway company.

Appellee admitted that he was the owner of the land described in the complaint; that he conveyed forty acres thereof to his wife on August 4, 1910, for the consideration of one hundred dollars, and he testified that he purchased the land for a homestead for himself and family before the execution of the bond; that he had improved and impressed it with the character of a homestead, and was using it as such when he became the agent of the railroad company, and was then and still is a married man and the head of a family and a citizen and resident of the State of Arkansas; that the land does not exceed in area one hundred and sixty acres, and is not in value over twenty-five hundred dollars. That when he moved from it to Lonoke he did so temporarily, intending to maintain it as his homestead; that he had not acquired any other, and after

being discharged by the railroad company, moved back and took up his residence on it, where he and his family still reside.

The affidavit for attachment was controverted, and the issue thereon submitted to the jury.

The court instructed the jury, which returned a verdict in favor of the appellant for the full amount claimed and in favor of the appellee, discharging the attachment, and from the judgment appellant appealed.

*Rose, Hemingway, Cantrell & Loughborough* and *E. L. McHaney,* for appellant.

1.  Appellee can not prevent the collection of the debt by showing that the lands covered by the attachment constitute his homestead. Art. 9, sec. 3, Const.; Kirby's Dig., § 3898; 77 Mo. 523; 11 S. W. 49; 74 Ark. 186; 56 Ark. 555; 92 N. C. 414; 12 Pac. 723; 13 Pac. 723.

2.  A conveyance by a husband to his wife while indebted and insolvent is a badge of fraud, and if he claims that the conveyance was not fraudulent, the burden is on him to prove that it was made in good faith; and the court should have instructed the jury to this effect when it submitted the issue upon the attachment to them. 68 Ark. 162; 73 Ark. 174; 71 Ark. 611; 76 Ark. 252.

*George M. Chapline* and *T. C. Trimble, Jr.,* for appellee.

1.  The right of subrogation does not exist in a case of this character. 23 Ark. 530; 27 Am. & Eng. Enc. of L. (2 ed.), 468.

2.  The word "fiduciaries" embraces only those who are bound for the discharge of express, technical trusts, where bonds are required by law to be given, and does not include those engaged in the execution of trusts springing from contract. The mere giving of a bond for faithful performance of service under a private contract of employment can not make one a technical fiduciary. 72 Miss. 297; 2 How. 202; 5 Bissell (U. S.) 324; 81 Ind. 271; 100 Mass. 498; 127 Mass. 41.

The indebtedness of appellee to the railway company did not arise by reason of money having been placed in his hands by the company as trustee of an express trust, but as agent under contract whereby he received the money, and his liabilities were occasioned by the breach of such contract. As to what constitutes an express trust, and what are implied

trusts, see 28 Am. & Eng. Enc. of L. (2 ed.), 859; 2 Story's Eq. Jur. 980; 1 Pomeroy, Eq. Jur. 152; Perry on Trusts, 24.

Not being a trustee of an express trust, appellee's homestead was exempt, and it is immaterial what disposition he made of it. 73 Ark. 489.

KIRBY, J., (after stating the facts). It is contended by appellant that, notwithstanding the lands attached constituted the homestead of appellee, they were nevertheless subject to the payment of its judgment.

Article 9, section 3, of the Constitution exempts the homestead of a resident of the State from the lien of any judgment or decree of any court, and from sale under execution or other process thereon, except such as may be rendered for the purchase money * * * or against executors, administrators, guardians, receivers, attorneys for moneys collected by them, and other trustees of an express trust for moneys due from them in their fiduciary capacity."

Does appellant's judgment come within the exception to this clause of the Constitution? We do not think so.

Express trusts are those created by the direct and positive acts of the parties manifested by some instrument in writing, whether by deed, will, or otherwise. Implied trusts are those which are deducible from the transaction as a matter of clear intention but not found in the words of the parties, or which are superinduced upon the transaction by operation of law as matter of equity independent of the particular intention of the parties. 28 Am. & Eng. Enc. of Law, (2 ed.), p. 859; 2 Story's Eq. Jur. 980; 1 Pom. Eq. Jur. 152; Perry on Trusts, 24.

In *Sanders* v. *Sanders*, 56 Ark. 590, a case where it was attempted to subject the homestead of an attorney at law to the payment of a judgment for money which had been received by him upon the giving of a forthcoming bond to discharge an order of attachment and garnishment, and was held as indemnity against liability upon such bond, the court held that he did not receive the money as an attorney, and said:

"The homestead is not, under the Constitution of 1874, exempt from sale under execution or other process issued on judgments rendered "against executors, administrators, guardians, receivers, attorneys for moneys collected by them and other trustees of an express trust for moneys due from them in their

fiduciary capacity." The cases enumerated in each are cases of special trusts. The persons expressly designated as not coming within the homestead exemption of the Constitution of 1874 are persons who hold moneys exclusively for the benefit of others, and the relations between whom and those for whom they hold money are purely of confidence and trust; and the 'other trustees of an express trust' mentioned must mean the same class of trustees. The debts excepted are those contracted by them for such moneys." *Godfrey* v. *Herring*, 74 Ark. 189; *Dupont* v. *Beck*, 81 Ind. 271.

There is no doubt but that appellee was the agent of the railway company, and in the performance of his duties collected certain sums of money for it, and failed to account for the amount sued for, which was paid by appellant as surety on his fidelity bond. He certainly does not come within the exception to the Constitution as one of the persons mentioned therein, and we do not think that his being such agent and collecting the moneys in the performance of his duties constituted him a trustee of an express trust, so far as such money was concerned, nor that it was due from him to the railroad company in a fiduciary capacity within the meaning of the Constitution which would render his homestead subject to the payment of a judgment therefor.

Such provision has reference only to the discharge of the duty of an express technical trust or such as is specifically mentioned in said article, and was not intended to, and does not, cover the relation of an ordinary clerk, employee, agent or servant, who has confidence reposed in him for the collection of money, and constitute him a trustee of an express trust of such moneys when collected.

Neither could the giving of a bond for the faithful performance of the duties and payment of monies collected in such service change the relation to one of a technical trustee of an express trust. *Barnard* v. *Sykes*, 72 Miss. 297.

Appellant was not in a position to complain of the attempted disposition of any part of appellant's homestead, whether by voluntary conveyance or otherwise, since it was not subject to the payment of its claim or judgment and, as to the homestead, there are no debts or creditors. *Hinkle* v. *Broad-*

*water,* 73 Ark. 489; *Ferguson* v. *Little Rock Trust Co.,* 99 Ark. 45.
The judgment is affirmed.